**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 31 Alanson Lane, LLC, and Matthew Vastola, *on behalf of themselves and Others Similarly Situated*, <br><br> Plaintiffs, <br><br> -v- <br><br> Town of Southampton, the Town Board of Southampton, *comprised of: Jay Schneiderman – Supervisor, and Councilpersons John Bouvier, Rick Martel, Cyndi McNamara, and Tommy John Schiavoni, each in their official capacities,* Trustees of the Freeholders and Commonalty of the Town of Southampton, *comprised of: Scott M. Horowitz, William Pell IV, Edward J. Warner, Jr., Ann Welker, and William Parash, each in their official capacities,* <br><br> Defendants. | 23-cv-8938 (NJC) (LGD) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiffs 31 Alanson Lane, LLC, and Matthew Vastola filed this action on behalf of themselves and others similarly situated against the Town of Southampton ("Town"), the Town Board of Southampton ("Town Board"), and the Trustees of the Freeholders and Commonalty of the Town of Southampton ("Trustees"), bringing claims under the Fifth and Fourteenth Amendments to the U.S. Constitution, various provisions of the New York Constitution, and New York common law. Plaintiffs' claims center on two allegations: first, that Defendants lack regulatory jurisdiction to require Plaintiffs to secure a "Trustees permit" in order to refurbish a marina, and second, that the "dimensional fee" assessed by the Trustees as a condition for securing this permit is unconstitutionally excessive.

1

Before the Court is Defendants' Motion to Dismiss the Complaint. Defendants argue that this Court should exercise *Burford* abstention and dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, Defendants move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).

For the reasons explained below, Defendants' motion to dismiss this action under Rule 12(b)(1) and the *Burford* abstention doctrine is denied. Several of Plaintiffs' claims survive Defendants' Rule 12(b)(6) motion, including Plaintiffs' federal takings claim, federal due process claims predicated on a lack of regulatory jurisdiction, and claims under the New York Constitution that Defendants engaged in a regulatory taking, violated due process, and levied an unauthorized municipal tax. Defendants' motion to dismiss fails to address Plaintiff's claim under Section 10 of the Municipal Home Rule Law, so this claim also survives. However, Defendants' Rule 12(b)(6) motion is granted as to Plaintiffs' federal due process claim based on the allegedly excessive nature of the Trustees' dimensional fee requirement and claims under New York common law.

## BACKGROUND

The following facts are taken from the Complaint and assumed to be true for the purpose of this order.

### I.    Plaintiffs' Refurbishment of Molnar's Landing

Plaintiff 31 Alanson Lane, LLC owns Molnar's Landing Marina & Bar, a property located in the unincorporated community of Hampton Bays in the Town of Southampton. (Compl. ¶¶ 13, 39 (Dkt. #1).) This property includes a marina next to a "dug canal" known as Foster's Creek. (*Id.* ¶ 13.) Both the marina and Foster's Creek were excavated out of dry land in the early 1900s, the marina's portion of which was privately owned. (*Id.* ¶¶ 51, 93.)

2

In 2021 and 2022, Plaintiff Matthew Vastola, the manager of Molnar's Landing, began to refurbish the decks, catwalks, hard docks, and floating docks along the marina. (*Id.* ¶¶ 41–42, 48.) On March 22, 2022, a Town police officer ordered Vastola to cease construction on the marina and issued him a ticket to appear at the Southampton Justice Court ("Dock Ticket"). (*Id.* ¶ 43.) The Dock Ticket alleged that Plaintiffs had violated Sections 111-37 and 111-30(A) of the Town Code by engaging in construction on the marina without the Trustees' approval. (*Id.* ¶¶ 43–45; Southampton, N.Y. Code §§ 111-30(A), 111-37.)

After communications with the Town through counsel, Plaintiffs sought out the services of First Coastal, LLC to help them obtain a permit. (Compl. ¶ 50, 52.) Between April and July 2022, First Coastal assembled and submitted a permit application, and they continued to meet with the Trustees and prepare supplemental materials over the following months. *Id.* ¶ 53.

On March 6, 2023, the Trustees voted to approve the Trustees permit for refurbishment of the marina in exchange for payment of a $35,280.00 "dimensional fee." (*Id.* ¶¶ 53, 55.) This fee is determined according to a fixed schedule in which applicants are charged by the square foot according to the category of permit sought. (*Id.* ¶¶ 30–31; Compl., Ex. 1 (Dkt. #1-1).) 31 Alanson Lane, LLC paid this dimensional fee, and on April 14, 2023, the Trustees issued the Trustees permit. (Compl. ¶¶ 56–58.)

## II.    Plaintiffs' Lawsuit

On May 3, 2023, 31 Alanson Lane, LLC delivered a Notice of Claim and Intention to File Action to the Town and to the Trustees. (*Id.* ¶ 59; Decl. in Supp. of Mot. to Dismiss, Ex. B ("Notice of Claim") (Dkt. #26-1).) Six months later, on December 5, 2023, Plaintiffs filed this lawsuit. (*See* Compl.)

The Complaint brings six causes of action. The first cause of action pleads takings and due process claims under 42 U.S.C. § 1983 ("Section 1983") and the Fifth and Fourteenth

Amendments to the U.S. Constitution, seeking damages, permanent injunctive relief, declaratory relief, and attorney's fees. (*Id.* ¶¶ 67–88; Pls.' Mem. of L. (Dkt. #27) at 16–17.)[1] The takings claim is based on a theory that Defendants' requirement that Plaintiffs pay an exorbitant dimensional fee constituted a taking of property without just compensation. (*See* Compl. ¶¶ 76, 83.) The due process claims are premised on two theories: first, that Defendants acted outside of their jurisdiction by requiring Plaintiffs to apply to the Trustees for a permit (*see id.* ¶ 68), and second, that the Defendants forced Plaintiffs to pay excessive and exorbitant fees in violation of the right to substantive due process (*see id.* ¶ 75).

Under the second cause of action, the Complaint brings five sets of claims for declaratory relief under N.Y.C.P.L.R. Article 30 and the New York Constitution: (1) a regulatory takings claim under Article I, Section 7(a) of the New York Constitution (*id.* ¶¶ 101–08), which is analogous to the federal takings claim; (2) a due process claim under Article I, Section 6 of the New York Constitution alleging that Defendants' application of the permitting requirements to Plaintiffs was outside their jurisdiction (*id.* ¶¶ 93–96, 109–13), which is analogous to one of the federal due process claims; (3) a substantive due process claim under Article I, Section 6 alleging that the dimensional fee is exorbitant (*id.* ¶¶ 97, 110–12), which is analogous to another federal due process claim; (4) a claim that the dimensional fee is unauthorized and "contrary to the provisions of [S]ection 10 of the [New York] Municipal Home Rule Law," N.Y. Municipal Home Rule Law § 10  (*id.* ¶ 100); and (5) and a claim that the dimensional fee schedule is not

---

[1] The Complaint's first cause of action also includes a nonsensical reference to 22 U.S.C. § 2201, a federal statute by which Congress recognized the humanitarian needs of disadvantaged children in Asian countries where there has been or continues to be a heavy presence of U.S. military and related personnel. (*See* Compl. at 18.) It also includes reference to alleged violations of Article 9, Section 2(c)(8) of the New York Constitution, which concerns the ability of local governments to levy, collect, and administer local taxes and is also raised in the second and third causes of action.

authorized as a municipal tax in violation of Article 9, Section 2(c)(8) of the New York Constitution (*id.* ¶¶ 97–98.).

Under the third cause of action, the Complaint bring claims under Section 10 of the Municipal Home Rule Law and Article 9, Section 2(c)(8) of the New York Constitution seeking an injunction against the use of the dimensional fee schedule, which are analogous to the declaratory relief claims under these statutes set forth in the second cause of action. (*Id.* ¶¶ 114–18.) The remaining causes of action bring common law claims for malicious prosecution (fourth cause of action, *id.* ¶¶ 119–27), money had and received (fifth cause of action, *id.* ¶¶ 128–50), and unjust enrichment (sixth cause of action, *id.* ¶¶ 151–66).

The Complaint clearly and explicitly pursues a number of Plaintiff's claims on behalf of a putative class of similarly situated individuals and entities under Federal Rule of Civil Procedure 23 and Article 9 of New York's Civil Practice Law and Rules: Claim One (claims under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments); Claim Five (New York common law claim for money had and received); and Claim Six (New York common law claim for unjust enrichment). (*Id.* ¶¶ 7, 61–66, 87, 144–50, 162–66.) Under each of these causes of action, the Complaint includes an explicit allegation that the claim is brought on behalf of a class of similarly situated persons and entities. (*See id.* ¶¶ 83, 87 (federal claims); ¶¶ 144–50 (money had and received claim); ¶¶ 162–66 (unjust enrichment claim).) Although less explicit, the Complaint also pleads Plaintiffs' claims under the New York Constitution on a class wide basis by alleging that others similarly situated have been required to obtain Trustee permits and to pay dimensional fees (*id.* ¶¶ 14, 61); that the "due process" and "regulatory takings" claims in general (without limitation to the federal claims) and defenses to those claims are typical of those of the potential Class (*id.* ¶ 63); and that the Trustees' demand for "an exorbitant and unlawful"

dimensional fee was an unauthorized tax under Article 9 Section 2(c)(8) of the New York

Constitution in the context of broader class allegations (*id.* ¶ 70). (*See also generally* ¶¶ 61–66.)

The Complaint provides the following class definition:

> [A]ll persons who have paid Dimensional Fees to the Board of Trustees to obtain
> Trustees Permits in order to construct, build, re-build, repair, or restore boathouse, deck,
> bulkhead, dock, piling, catwalk, jetty, revetment, ramp, walkway or stair construction for
> the period of six years prior to the filing of this action . . . .

(*Id.* ¶ 87(f); *see also id.* ¶ 66 (providing similar definition without the six-year limitation); *id.* ¶

61 (referencing the six-year limitation).)

On May 10, 2024, Defendants served the motion to dismiss the Complaint. (*See* Ltr. to

Pls.' Counsel (Dkt. #19).) Plaintiffs opposed on July 10, 2024. (*See* Ltr. to Defs.' Counsel (Dkt.

#20).) Defendants replied on August 8, 2024. (*See* Defs.' Reply (Dkt. #28).) The motion is fully

briefed.

## LEGAL STANDARD

### I.    Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint

for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Dismissal of a case for lack of

subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the

statutory or constitutional power to adjudicate it." *Green v. Dep't of Educ. of the City of New

York*, 16 F.4th 1070, 1075 (2d Cir. 2021); *see also Russo v. United States*, No. 22-cv-1869, 2024

WL 726884, at *1 (2d Cir. Feb. 22, 2024) (summary order). "If the court determines at any time

that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P.

12(h)(3). A court considers a Rule 12(b)(1) challenge before other arguments for dismissal

because dismissal for lack of subject matter jurisdiction renders a defendant's defenses and

objections moot. *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019); *see also Pressley v.*

6

*City of New York*, No. 11-cv-03234, 2013 WL 145747, at \*5 (E.D.N.Y. Jan. 14, 2013) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.").

When considering a motion to dismiss under Rule 12(b)(1), a court takes as true the factual allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction. *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). When a party has placed jurisdictional facts into dispute by "offer[ing] extrinsic evidence that contradicts the material allegations of the complaint," however, "the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty*, 28 F.4th at 441–42.

## II.    Failure to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Green*, 16 F.4th at 1076–77. "In determining if a claim is sufficiently 'plausible' to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiff[ ] . . . . " *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility

7

that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

For the purpose of evaluating Defendants' Motion to Dismiss under Rule 12(b)(6), I assume as true all well-pled allegations in the Amended Complaint and draw all reasonable inferences in Plaintiffs' favor. *See Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020). In resolving a Rule 12(b)(6) motion, "district courts may review only a narrow universe of materials, which includes facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, [and] documents . . . . integral to the complaint." *Clark*, 89 F.4th at 93; *see also In Re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 41 (2d Cir. 2025). A court therefore "errs when it considers affidavits and exhibits submitted by defendants" or "factual allegations contained in legal briefs or memoranda" unless those materials fall into one of the exceptions identified above. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106–07 (2d Cir. 2021). To be incorporated by reference, the complaint must make "a clear, definite and substantial reference" to the documents. *Trump v. Vance*, 977 F.3d 198, at 210 n.8 (2d Cir. 2020). "[A] mere passing reference" to a document is insufficient to incorporate the document into the complaint. *Id.*; *see also Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011). A document "may be deemed integral to the complaint when the complaint relies heavily upon its terms and effect." *Clark*, 89 F.4th at 93 n.18.

## DISCUSSION

*Burford* abstention is a narrow exception to a federal court's unflagging obligation under Article III of the U.S. Constitution to adjudicate cases and controversies. It does not apply to this action, and Defendants' motion to dismiss this action under Rule 12(b)(1) is therefore denied. The Court thus proceeds to analyze the plausibility of the claims pled in the Complaint.

The Complaint pleads plausible claims under 42 U.S.C. § 1983 that Defendants' conduct enacted an unlawful taking in violation of the Fifth and Fourteenth Amendments and that Defendants violated the Fourteenth Amendment right to due process by acting outside of their regulatory jurisdiction in requiring Defendants to stop construction on the marina and submit to the Trustees' permitting process. Defendants cannot secure dismissal of Plaintiff's takings, due process, and local government tax claims under the New York Constitution on the ground that these claims are not set forth in the Notice of Claim and that Vastola is not listed as a claimant in the Notice because a notice of claim is not required for these claims. The motion to dismiss these claims is therefore denied. Defendants entirely fail to address Plaintiffs' Municipal Home Rule Law Section 10 claim, so this claim also survives Defendants' motion to dismiss.

However, Defendants' Rule 12(b)(6) motion is granted as to Plaintiffs' federal due process claim premised on the alleged excessive nature of the Trustees' dimensional fee, which is duplicative of the federal takings claim and therefore precluded as a matter of law. The Court also dismisses Plaintiffs' state common law claims for various reasons as set forth below.

## I. *Burford* Abstention

*Burford* abstention does not apply in this case. Under the doctrine articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), a federal court sitting in equity can decline to exercise jurisdiction when "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or

9

(2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (citation modified). *Burford* abstention is an "extraordinary and narrow exception" to a federal court's obligation to adjudicate cases, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976), and should be exercised only "when federal review would disrupt a state's efforts to establish a coherent policy on a matter of substantial importance to the state," *Sheerbonnet, Ltd. v. Am. Exp. Bank Ltd.*, 17 F.3d 46, 48 (2d Cir. 1994); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996). Whether a court should exercise *Burford* abstention is a fact-dependent inquiry that requires applying the relevant factors "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1244 (2d Cir. 1992) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 21 (1983)).

The Second Circuit has "identified three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public": "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009) (citation omitted); *see Bethphage*, 965 F.2d at 1243; *Dittmer v. County of Suffolk*, 146 F.3d 113, 116 (2d Cir. 1998). Because none of these factors favor abstention for the reasons explained below, Defendants' motion to dismiss the case pursuant to *Burford* and Rule 12(b)(1) is denied.

### A.    Specificity of the State Regulatory Scheme

The first *Burford* abstention factor—the specificity of the state regulatory scheme—weighs against abstention because the grants of authority to the Trustees over the Southampton waterways do not amount to a detailed regulatory regime.

Courts invoke *Burford* abstention when the state has "a complex administrative and judicial system for regulating" a particular industry, *Levy v. Lewis*, 635 F.2d 960, 963–64 (2d Cir. 1980), such that "federal court intervention [would] be disruptive of a carefully established state system" and "yield inconsistent and therefore conflicting results." *Liberty Mut.*, 585 F.3d at 651; *see also New Orleans Pub. Serv., Inc.*, 491 U.S. at 362 ("Burford is concerned with protecting complex state administrative processes from undue federal interference."). For example, courts have abstained from exercising jurisdiction in cases involving state regulation of intrastate railroad passenger service, state regulation of employment agencies, and state regulation of insurance, all of which have involved "a statutorily established regulatory program by state officials." *Levy*, 635 F.2d at 963 (collecting cases).

Here, Defendants point to no state legislation, much less a "statutorily established regulatory program by state officials," governing Southampton's waterways. *Id.*; *see* Defs.' Mem. 13. Instead, Defendants rely on broad delegations of regulatory authority contained in statutes enacted in 1818 and 1831, followed by nearly two hundred years of legislative silence (Defs.' Mem. 3–8, 13)—a far cry from the detailed regulatory regimes that implicate *Burford*. *See Goldstein v. Pataki*, 488 F.Supp.2d 254, 272–74 (E.D.N.Y. 2007) (holding that *Burford* abstention was not justified where adjudicating a specific takings claim would not impact the coherence of New York's statutory takings regime). The lack of a specific regulatory scheme thus weighs strongly against *Burford* abstention.

## B.    Debatable Construction of State Statutes

Because the Court need not "give one or another debatable construction to a state statute," the second *Burford* factor also weighs against abstention. *Liberty Mut.*, 585 F.3d at 650 (quoting *Hachamovitch*, 159 F.3d at 697). This factor requires the Court to consider "the necessity of discretionary interpretation of state statutes." *Bethphage*, 965 F.2d at 1243; *see id.* (finding that the second factor weighed in favor of abstention because the court had to consider "whether the state statutes contain[ed] broad terms that properly should be interpreted by a state agency"); *Petrello v. Zoning Bd. of Appeals of Vill. of Sagaponack*, No. 22-cv-2632, 2022 WL 17278890, at *3 (E.D.N.Y. Nov. 29, 2022) (finding that the second factor weighed in favor of abstention because the court needed to "interpret[] various state and local laws" and "determine[e] whether the Village Law supersedes the zoning laws of the Town of Southampton").

Defendants do not point to any state statute requiring a discretionary interpretation. Instead, they generally assert that this case involves issues "regarding the scope of the Trustee's authority and its interplay with Town government; the Trustees' ownership and control over the bottomlands, waterways and marina; and the Trustee fees." (Defs.' Mem. 14.) Because no specific statute requires a discretionary interpretation, this factor also weighs against abstention from the exercise of jurisdiction over this action.

## C.    Subject Matter of the Litigation

The third *Burford* factor—whether the subject matter of the litigation is traditionally one of state concern—likewise does not favor abstention. "Burford abstention is not required even in cases where the state has a substantial interest if the state's regulations violate the federal constitution." *Hachamovitch v. DeBuono*, 159 F.3d 687 (2d Cir. 1998); *see also All. of Am. Insurers v. Cuomo*, 854 F.2d 591, 601 (2d Cir. 1988) (declining to exercise *Burford* abstention in

a case involving a constitutional challenge to "part of a coherent state regulatory system"). Here, Plaintiffs allege violations of the Fifth Amendment Takings Clause and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. (Compl. ¶¶ 67–88.) Contrary to Defendants' contention that these claims are "readily dispensable" (Defs.' Mem. 14), Plaintiffs' federal claims form the core of their Complaint. Most of Plaintiffs' state law claims are virtually identical to these federal claims. (*See* Compl. ¶¶ 101–13 (alleging takings and due process violations of the New York Constitution); *id.* ¶¶ 114–18 (seeking injunctive relief for the state takings and due process claims); *id.* ¶¶ 128–66 (stating unjust enrichment and money had and received claims predicated on these violations).)  Accordingly, the third factor also weighs against abstention.

All three of the factors considered when determining whether to abstain from the exercise of jurisdiction under *Burford* weigh against abstention here. Thus, Defendants' Rule 12(b)(1) motion to dismiss is denied.

## II.    Federal Claims

### A.    Takings Claim

The Complaint pleads plausible Section 1983 claims to enforce Plaintiffs' rights under the Fourteenth Amendment and the Fifth Amendment Taking Clause. Accordingly, Defendants' motion to dismiss the federal takings claim is denied.

The Takings Clause of the Fifth Amendment "provides that 'private property [shall not] be taken for public use, without just compensation.'" *Brinkmann v. Town of Southold*, 96 F.4th 209 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 428 (2024) (quoting U.S. Const. amend. V). The Fourteenth Amendment incorporates this requirement against the States. *Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 276 (2024); *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 261 (2d Cir. 2014). In addition to prohibiting the taking of real property without compensation,

13

the Takings Clause prohibits the state from conditioning the approval of a land-use permit on the relinquishment of a protected property interest "unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 599 (2013) (citing *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994)). This requirement applies to permits conditioned on "monetary exactions" as well as those conditioned on grants of land. *Id.* at 612; *Sheetz*, 601 U.S. at 276.

For a monetary exaction to satisfy the nexus and proportionality requirements, it must (1) have an "essential nexus" to a legitimate public interest and (2) be roughly proportional to the need created by the proposed development for which the permit is sought. *See Dolan*, 512 U.S. at 374, 386, 390; *see also Knight v. Metro. Gov't of Nashville & Davidson Cnty.*, 67 F.4th 816, 825 (6th Cir. 2023) ("[T]he government must impose the condition because of [the project's social] costs and not for other reasons"). Courts have recognized diverse interests that satisfy the nexus requirement, including offsetting increased traffic, *Dolan*, 512 U.S. at 395, mitigating the risk of flooding, *id.* at 387, addressing the increased need for low-income housing, *Com. Builders of N. California v. City of Sacramento*, 941 F.2d 872, 876 (9th Cir. 1991), and compensating for increased costs to the public, *see Herron v. Mayor & City Council of Annapolis*, 388 F. Supp. 2d 565, 571 (D. Md. 2005) (noting a nexus between residential development and impact fees offsetting the cost of accommodating new students), *aff'd sub nom. Herron v. Mayor & City Council, Annapolis*, 198 F. App'x 301 (4th Cir. 2006). Rough proportionality is satisfied where the exaction is comparable in magnitude to the social costs of the development. *Koontz*, 570 U.S. at 605–06; *see Dolan*, 512 U.S. at 391 (recognizing this standard and noting that "no precise mathematical calculation is required").

14

Here, the Complaint brings a plausible Takings Clause claim against the dimensional fee. It alleges that the Trustees required the payment of a $35,280.00 dimensional fee in exchange for approving Plaintiffs' permit, and that the Trustees are an agency of the Town or, in the alternative, a separate municipal entity. (Compl. ¶¶ 17–20, 55, 78.) It further alleges that the dimensional fee "bears no reasonable relationship to the cost of administering and enforcing the Trustees Permit process," is "arbitrary," and is "exorbitant." (*Id*. ¶¶ 33, 38, 70.) The claim that the dimensional fee is exorbitant to any public need is particularly plausible given that Plaintiffs sought to refurbish *existing* fixtures at their marina (*Id.* ¶ 68)—a project with apparently minimal public impacts. *Cf. Beck v. City of Whitefish*, 653 F. Supp. 3d 813, 819 (D. Mont. 2023) (finding a cognizable takings claim where impact fees were alleged to "greatly exceed[] the actual impacts" of a proposed development). The Complaint's allegations that a government actor imposed a disproportionate fee in exchange for a development permit plausibly states a takings claim based on an allegedly unconstitutional monetary exaction. *See Koontz*, 570 U.S. at 612.

Defendants do not dispute that the Trustees are a governmental entity. (*See* Defs.' Mem. 3; Defs.' Reply 2–3 (noting the Trustees' "regulatory authority").) Defendants also do not dispute that the dimensional fee fails to satisfy the nexus and proportionality requirements. (*See* Defs.' Mem 18–20.) Instead, Defendants argue (1) that the Trustees, not the Plaintiffs, "own the bottomlands and regulate the waterways, which includes Foster's Creek . . . whose waters run up the high water mark at the marina bulkheads," and (2) that takings doctrine is therefore inapplicable. (*Id.* at 18–19.)  Defendants argue that the dimensional fee is "akin to a user fee for use and construction on Trustee waters" rather than a condition for developing private property. (*Id.* at 19.) Defendants base the Trustees' claim to the right to regulate the marina on colonial

patents and subsequent New York legislative acts, constitutions, and court rulings. (*Id.* at 3–8; *see* Part I.A, *supra*.)

Defendants' claim to title fails to address Plaintiffs' core argument: that the marina was excavated in the early 1900s out of "privately held uplands" to which the Trustees held no title. (Compl. ¶¶ 93, 120.) Under New York law, changes to land and water occurring through "avulsion"—that is, through "sudden" rather than "gradual[] and imperceptibl[e]" change—do not alter the boundaries of property ownership. *In re City of Buffalo*, 99 N.E. 850, 852 (N.Y. 1912); *see City of New York v. Realty Associates*, 176 N.E. 171, 172 (N.Y. 1931) (holding that property owners retain title to land lost by avulsion). This is the case even if these changes are caused by human activity, as in the case of artificial waterways dug out of dry land. *See Fairchild v. Kraemer*, 204 N.Y.S.2d 823, 825 (1960) (holding that a landowner retained possession of a basin created on privately held land); *Trs. of Freeholders & Commonalty of Town of Southampton v. Heilner*, 375 N.Y.S.2d 761, 769 (Sup. Ct. 1975) ("If natural avulsion causing submergence does not cause a change in title, certainly submergences caused by man's actions would not either."). Although Defendants point to patents, statutes, and constitutional provisions affirming the Trustees' title to "Town waters" (Defs.' Mem. 3–7), these grants do not concern the property containing the marina, which at the time of these enactments was dry land. And insofar as later court opinions contain statements indicating that the Trustees' have title to *all* waterways within the Town, these statements are dicta and do not explicitly contemplate waterways built on private property. *See, e.g.*, *Brookhaven Baymen's Ass'n, Inc. v. Town of Southampton*, 163 N.Y.S. 3d 77, 79 (2022) (describing the Trustees in passing as "title owners to the underwater lands in the Town of Southampton"). Defendants therefore fail to meet their burden of showing that the allegations in the Complaint, taken as true, fail to state a takings

16

claim under the Fourteenth and Fifth Amendments, and their motion to dismiss this claim is therefore denied.

### B.    Due Process Claims

Plaintiffs assert due process claims on two grounds: (1) the Trustees lacked regulatory jurisdiction to require a permit for refurbishing the marina, and (2) the dimensional fee charged by Defendants for this permit was unconstitutionally excessive. (Compl. ¶¶ 68–88.) Because Defendants do not establish, at this stage, that the Trustees had regulatory jurisdiction to require a permit for refurbishing the marina, Defendants' motion to dismiss Plaintiffs' claims predicated on a lack of regulatory jurisdiction is denied. But Plaintiffs' remaining due process claim— which alleges that the Trustees' dimensional fee requirement is unconstitutionally excessive— fails because the Fifth Amendment Takings Clause, which applies to Defendants through the Fourteenth Amendment, provides the explicit textual source of the constitutional protection.

### 1.  Jurisdictional Claims

Plaintiffs' claim that Defendants' actions in terminating Plaintiffs' construction work, coercing them into applying for a permit, and compelling them to defend themselves in court were illegitimate because Defendants lacked regulatory jurisdiction to take these actions. (Compl. ¶¶ 68–69.) These due process claims may proceed because Defendants have not demonstrated that the Trustees have regulatory jurisdiction over the marina.

It is undisputed that the Town has jurisdiction to regulate the marina and can delegate this regulatory authority to the Trustees. (*See id.* ¶ 24 (acknowledging the Town's power to "adopt local laws for the Town" and "establish policy for the Town").) The Town Code incorporates by reference the entirety of the Trustees' Rules and Regulations for the Management and Products of the Waters of the Town of Southampton, also known as the "Blue Book." *See* Southampton, N.Y. Code § 111-37 ("Every person shall comply with the regulations as provided in the Rules

17

and Regulations for the Management and Products of the Waters of the Town of Southampton promulgated by the Board of Trustees of the Freeholders and Commonalty of the Town of Southampton in all matters.”); *see also Brookhaven Baymen II*, 163 N.Y.S. 3d at 81 (noting that “the Town Board, in passing Local Law 21, . . . incorporate[d] the Trustees’ Rules and Regulations by reference”). These incorporated Blue Book regulations, in turn, set forth the Trustees’ permitting authority.

Defendants principally rely on Section 47 of the Blue Book to justify their regulatory jurisdiction. (*See* Defs.’ Mem. 8.) This provision applies to “Town waters or the bottoms of the Town waters or the bay beach area or ocean beach area . . . .” (Decl. in Supp. of Mot. to Dismiss, Ex. E, Article VII, Dredging, Docks, Bulkheading and Channels (“Article VII”) § 47A (Dkt. # 26-5) at 2.) In accordance with this general limitation, Section 47(A)(6) requires a permit in order to:

> [e]rect, construct, reconstruct, alter, enlarge, drive, place remove, demolish, or deconstruct any structure, including a dock, pile, tie-off polices, moorings, or other obstruction, or bulkhead, jetty, retaining wall, groin, reventment, rip-rap, ramp, catwalk, walkway, stairs, sand fencing or any structure constructed for the purpose of providing access to and from the shoreline.

(*Id.* § 47(A)(6).) If Plaintiffs’ marina constitutes a “Town water[],” then this Blue Book provision would govern by virtue of Southampton, N.Y. Code § 111-37 and would require Plaintiffs to obtain a Trustee permit before repairing and replacing the existing catwalks, fixed docks, and floating docks at their marina. But Defendants have not shown that the marina here qualifies as a “Town water.” None of Defendants’ exhibits, including the excerpt of Article VII of the Bluebook, define “Town water,” and neither of Defendants’ memoranda explain why the marina, which was dug out of privately held upland, qualifies as a “Town water” as a matter of

18

law. (*See* Defs.' Mem.; Dkt. ## 26-1 through 26-6; Defs.' Reply.)[2] Accordingly, because Defendants have failed to carry their burden to demonstrate that Plaintiffs' marina necessarily qualifies as a "Town water," the Complaint pleads plausible due process claims predicated on Defendants' lack of regulatory jurisdiction to enforce the Blue Book Section 47 permitting requirements against Plaintiffs.

### 2. Dimensional Fee Claims

Plaintiffs' remaining due process claim, which asserts that the Trustees' dimensional fee requirement is unconstitutionally excessive, fails. (*See* Compl. ¶¶ 71, 73–75, 81–83.)

"[W]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court *must* assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (emphasis supplied) (internal quotation marks omitted); *Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019) (explicitly recognizing that "the Supreme Court [has] narrowed the scope of substantive Due Process to claims that are not covered by other provisions of the Constitution"). Here, Plaintiffs' assert a substantive due process claim predicated on Defendants' "demand for payment of exorbitant building permit fees" in exchange for a permit. (Compl. ¶ 75.) The same factual allegations state a plausible claim for a violation of the Fifth Amendment Takings Clause, which applies to Defendants through the Fourteenth Amendment, as explained above. (*See* Part II.A, *supra*.) Accordingly, Plaintiffs' substantive due process claim targeting the excessiveness of the dimensional fee is dismissed because "substantive due process cannot 'do the work of the

---

[2] Defendants do not address the definition of "Town water" in any way, much less identify where this term is defined either within or outside of the Blue Book provisions they submit in support of their motion to dismiss. Nor is there any obvious definition of the term "Town water" in the Southampton Town Code. *See, e.g.*, Southampton, N.Y. Code § 111-11 (Definitions).

Takings Clause.'" *Polizzi v. Cnty. of Schoharie*, 720 F. Supp. 3d 141, 152 (N.D.N.Y. 2024)

(quoting *Stop the Beach Renourishment*, *Inc. v. Fla. Dep't of Env't Prot.,* 560 U.S. 702, 721

(2010) (plurality opinion)).

### III.    State Law Claims

#### A.    Takings, Due Process, and Local Government Tax Claims Under the New York Constitution

Defendants' motion to dismiss Plaintiffs' takings, due process, and local government tax

claims arising under the New York Constitution is denied. Defendants' sole argument for

dismissal of these claims is that Plaintiffs did not list them in the Notice of Claim served on the

Clerk of the Trustees of the Freeholders and Commonalty of the Town of Southampton and the

Clerk of the Town of Southampton, and that Vastola was not listed as a claimant in the Notice.

(Defs.' Mem. 22–24; *see* Decl. in Supp. of Mot. to Dismiss, Ex. B at 3.) However, a notice of

claim was not required.

In a tort action against a public corporation, New York law requires the plaintiff to serve

the defendant with a notice of claim "within ninety days after the claim arises." N.Y. Gen. Mun.

Law §§ 50-e(1)(a), 50-i(1) (McKinney); *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1160

(N.Y. 1981). "The purpose of the statutory notice of claim requirement is to afford the public

corporation an adequate opportunity to investigate the circumstances surrounding the accident

and to explore the merits of the claim while information is still readily available." *Vallejo-Bayas*

*v. New York City Transit Authority*, 962 N.Y.S.2d 203, 204 (App. Div. 2013); *see O'Brien*, 429

N.E.2d at 1160.

New York courts, however, waive the notice-of-claim requirement for cases "brought to

protect an important right, which seek relief for a similarly situated class of the public, and

whose resolution would directly affect the rights of that class or group." *Mills v. Cnty. of*

*Monroe*, 451 N.E.2d 456, 458 (N.Y. 1983); *cf. Turner v. County of Suffolk*, 955 F. Supp. 175, 177 (1997) (requiring a notice of claim when "plaintiff's complaint [was] limited to redressing plaintiff's individual injury"). In such cases, "[t]he interests in their resolution on the merits override the State's interest in receiving timely notice before commencement of an action." *Mills*, 451 N.E.2d at 458.

Plaintiffs' claims under the New York Constitution—involving local governments' taxing power under Article 9 Section 2(c)(8) and the state equivalent of the Fifth Amendment Takings Clause and the Fourteenth Amendment Due Process Clause—seek to vindicate a public right on behalf of a class of similarly situated individuals, so a notice of claim was not required. (*See* Compl. ¶¶ 7, 14, 61–66, 70, 89–118.) Plaintiffs allege that "numerous [o]thers, likely hundreds of them, have been required to obtain Trustees Permits from the Defendants and to pay Dimensional Fees." (*Id.* ¶¶ 61, 65.) Plaintiffs thus seek relief on behalf of:

> [A]ll persons who have paid Dimensional Fees to the Board of Trustees to obtain Trustees Permits in order to construct, build, re-build, repair, or restore boathouse, deck, bulkhead, dock, piling, catwalk, jetty, revetment, ramp, walkway or stair construction for the period of six years prior to the filing of this action . . . .

(Compl. ¶ 87(f); *see also id.* ¶¶ 14, 66.) Because Plaintiffs bring claims under the New York Constitution on behalf of a putative class of similarly situated individuals and entities, such claims are not "limited to redressing plaintiff's individual injury." *Turner*, 955 F. Supp. at 177.

In Defendants' reply brief, they argue for the first time in a single sentence that Plaintiffs' claims arising under the New York Constitution "should readily be dismissed because they are duplicative of the LLC's federal claims." (Defs.' Reply 11.) But because this argument was "raised only in defendants' reply brief," it was forfeited. *Ronen v. RedRoute, Inc.*, 763 F. Supp. 3d 319, 333 (E.D.N.Y. 2025); *see e.g.*, *Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 258 n.14 (S.D.N.Y. 2022) (noting the "well-settled" rule that "arguments may not be made for

21

the first time in a reply brief" (alterations adopted and citation omitted)); *Valerio v. City of New York*, No. 18-cv-11130, 2020 WL 353749, at *5 (S.D.N.Y. Jan. 21, 2020). Moreover, Defendants' passing reference to duplication between the federal and state constitutional claims ignores that the Complaint does not plead a claim under the U.S. Constitution that is analogous to the claim that the dimensional fee schedule is not authorized as a municipal tax in violation of Article 9, Section 2(c)(8) of the New York Constitution.

Accordingly, this Court denies Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' claims under the New York Constitution alleging that they were (1) forced to make an "extra-jurisdictional application to the Board of Trustees for a Trustees Permit" (Compl. ¶¶ 107, 110); (2) required to pay an "exorbitant, unlawful, unconstitutional, and arbitrary Dimensional Fee" (*id.* ¶ 105; *see also* ¶ 70 (tying this claim to New York Constitution Article 9, Section 2(c)(8)); ¶ 110 (same for New York Constitution Article I, Section 6); (3) subject to an unlawful regulatory taking (*id.* ¶ 108); and (4) subject to an unlawful tax (*id.* ¶ 70). Moreover, as noted, because Defendants' motion fails to address the claim under Municipal Home Rule Law Section 10, that claim survives as well.

### B.    Malicious Prosecution and Abuse of Process

Defendants' motion to dismiss Plaintiffs' claims for malicious prosecution and abuse of process under Rule 12(b)(6) is granted.

Plaintiffs do not dispute that they failed to list claims for malicious prosecution and abuse of process in their notice of claim. (*See* Pls.' Mem. 19–20; Notice of Claim.) Nor do they assert these claims on behalf of a broader class of similarly situated persons or entities. (*See* Compl. ¶¶ 119–27.) Accordingly, Defendants' motion to dismiss these claims is granted.

22

### C.        Unjust Enrichment and Money Had and Received

Defendants' motion to dismiss Plaintiff's claims for unjust enrichment and money had and received under Rule 12(b)(6) is granted.

Unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.*; *see also In re 305 E. 61st St. Grp. LLC*, 130 F.4th 272, 282 (2d Cir. 2025). Two claims are duplicative of one another if they "arise from the same facts . . . and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (App. Div. 2008)); *Town of Wallkill v. Rosenstein*, 837 N.Y.S.2d 212, 215 (App. Div. 2007)

The same standards apply to Plaintiffs' claim of money had and received. "A money had and received claim is essentially identical to an unjust enrichment claim." *Rynasko v. New York Univ.*, 63 F.4th 186, 201 (2d Cir. 2023); *see also Marini v. Adamo*, 995 F. Supp. 2d 155, 206 (E.D.N.Y. 2014), *aff'd*, 644 F. App'x 33 (2d Cir. 2016). As such, where a money had and received claim is duplicative of another cause of action, it is also barred. *See Marini*, 644 F. App'x at 35–36 (relying on *Corsello*, 967 N.E.2d at 1185).

Here, Plaintiffs assert unjust-enrichment and money-had-and-received claims are predicated on (1) the application fee for processing the Trustees' permit, which they claim was assessed without jurisdiction, and (2) the dimensional fee, which they allege was also assessed without jurisdiction and was "unconstitutional and unlawful." (Compl. ¶¶ 128–43 (money had and received), 151–61 (unjust enrichment).) They seek to bring both claims on behalf of

23

themselves and others similarly situated. (*Id.* ¶¶ 144–50, 162–66.) Neither claim survives a Rule 12(b)(6) analysis.

Plaintiffs' unjust-enrichment and money-had-and-received claims rest on the assertion that the dimensional fee was unconstitutional and unlawful. (*Id.* ¶¶ 136–39, 153.) They seek restitution of the $35,280.00 fee. (*Id.* ¶¶ 140–43, 153, 158–60.) These claims (1) arise from the same application and dimensional fees as those challenged in the federal and state constitutional takings and due process claims and (2) do not allege distinct damages as those stated in the federal and state constitutional takings and due process claims. Thus the unjust-enrichment and money-had-and-received claims are entirely duplicative of the takings claims and the due process claims challenging Defendants' conduct as taken outside of their jurisdiction. *See Manchanda v. Google*, No. 16-cv-3350, 2016 WL 6806250, at *6 (S.D.N.Y. Nov. 16, 2016) ("[A]n unjust enrichment cause of action is not permitted where it is duplicative of other avenues for relief."); *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 227 (E.D.N.Y.) (dismissing unjust enrichment claim that was "duplicative of" plaintiff's "substantive Due Process claim"), *aff'd on other grounds*, 630 F. App'x 61 (2d Cir. 2015); *Marini*, 644 F. App'x at 35–36 (barring money had and received claim where it is duplicative of another cause of action). The Complaint therefore fails to state claims for unjust enrichment or money had and received. Accordingly, Defendants' motion to dismiss these claims under Rule 12(b)(6) is granted.

## IV.    Leave to Amend

Rules 15 and 16 of the Federal Rules of Civil Procedure govern a plaintiff's ability to amend the complaint, and "when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). First, Rule 15(a)(1) permits "a plaintiff [to] freely amend her pleadings . . . as of right without court permission" twenty-one days after a complaint is served or twenty-one days after

24

service of a responsive pleading or motion under Rule 12(b), (e), or (f). *Id*. Second, after the time to amend as of right has passed—"either upon expiration of a specified period [of time] in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)"—a plaintiff seeking to amend a complaint must either request leave from the court or obtain the opposing party's written consent. *Id.*; Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) sets forth a lenient standard under which "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2)*.* "Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-cv-2987, 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Third, Rule 15(a)(2)'s period of "liberal" amendment ends upon expiration of the date set by the court as the deadline after which no amendment will be permitted. *Sacerdote*, 9 F.4th at 115. At that point, Rule 16 also applies, and a court must balance the "liberal" amendment standard of Rule 15 with Rule 16(b)(4)'s requirement that the plaintiff show "good cause" for an extension of the deadline to amend. Fed. R. Civ. P. 16(b)(4); *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (plaintiff must satisfy both Rules 15 and 16 to be permitted to amend after the deadline in the scheduling order has passed).

At this early stage of the action, the Court has not set a deadline after which no amendment will be permitted. Accordingly, leave to amend is analyzed under Rule 15(a)(2), and such leave must be denied only if there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties. *Adlife Mktg.*, 2018 WL 4568801, at *1 (citing *Forman*, 371 U.S. at 182); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *Sacerdote*, 9 F.4th at 115.

Here, amendment of the dismissed claims would likely be futile. First, amendment would not cure the fact that the abuse of process and malicious prosecution claims are dismissed due to Plaintiffs' failure to include them in the Notice of Claim. Nor would amendment cure the fact that the federal substantive due process claim premised on the alleged excessive nature of the Trustee's dimensional fees is barred as duplicative of the federal takings claim. Similarly, it is unclear whether any amendment could cure the deficiencies in the unjust enrichment and money hand and received claims, which are based on the same alleged actions and concern the same alleged damages, and are therefore entirely duplicative of, the surviving federal and state takings claims and the federal and state due process claims challenging Defendants' alleged conduct taken outside of their jurisdiction. Thus, leave to amend these claims is likely barred as futile under Rule 15(a)(2). *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000) (amendment futile where "amended portion of the complaint would fail to state a cause of action"); *Morales v. New York Univ.*, 585 F. Supp. 3d 610, 613 (S.D.N.Y. 2022) ("A proposed amendment is futile when 'it could not withstand a motion to dismiss pursuant to Rule 12(b)(6).'" (quoting *Long v. Parry*, 679 F. App'x 60, 63 (2d Cir. 2017)).

Nevertheless, the Court will permit the parties to meet and confer as to whether Plaintiffs seek leave to amend the Complaint to address the deficiencies identified in this Memorandum and Order with respect to the dismissed claims and, if so, whether Defendants oppose.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss this action under Rule 12(b)(1) and the *Burford* abstention doctrine is denied. Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' takings claims under the Fifth and Fourteenth Amendments, Fourteenth Amendment due process claims predicated on a lack of regulatory jurisdiction, and takings, due process, and

local government tax claims arising under the New York Constitution is denied. Defendants' motion to dismiss fails to address Plaintiffs' claim under Section 10 of the Municipal Home Rule Law, so this claim also survives. Defendants' motion to dismiss Plaintiffs' federal due process claim based on the alleged excessive nature of the Trustees' dimensional fee requirement and claims under New York common law under Rule 12(b)(6) is granted.

The parties must meet and confer on whether Plaintiffs seek leave to file an amended complaint under Rule 15(a)(2) of the Federal Rules of Civil Procedure to cure the deficiencies addressed in this Memorandum and Order with respect to the dismissed federal due process claim based on the alleged excessive nature of the Trustee's dimensional fee requirement and the New York common law claims. Following a meet and confer, the parties shall submit a joint letter to the Court by February 27, 2026.

Dated: Central Islip, New York
        February 15, 2026

                                    /s/ Nusrat J. Choudhury
                                    NUSRAT J. CHOUDHURY
                                    United States District Judge